RULINGS ON MOTIONS BEFORE THE FULL COMMISSION
Plaintiff's motion during oral argument to this panel of the Full Commission to submit documents into evidence summarizing the case is DENIED. However, the medical reports of Dr. Craig Derian M.D. for treatment of plaintiff subsequent to the Deputy Commissioner's hearing are allowed into evidence without objection of defendant. Plaintiff's motion to strike defense counsel's representations concerning settlement negotiations is DENIED. Plaintiff's motion to assess plaintiff's attorney fees against defendant is DENIED. Plaintiff's motion to strike the testimony of Dr. Brown and Cynthia Bowdenheimer, being untimely made, is DENIED. Defendant's motion to assess the costs of Dr. Brown's second deposition against plaintiff is DENIED.
* * * * * * * * * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceeding before Deputy Commissioner Glenn. The appealing party has not shown good ground to reconsider the evidence; rehear the parties or their representatives; receive further evidence except the medical records of Dr. Derian; or amend the Opinion and Award with the exception of minor technical modifications and modifications regarding the assessment of attorney's fees.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties on or about March 18, 1993, entered into an I.C. Form 21 Agreement which was approved by the Industrial Commission on May 28, 1993.
2. Following the hearing, depositions along with the respective medical records that were submitted with the depositions became a part of the record of this case.
3. Defendant consented to plaintiff's request that Dr. Craig Derian assume her care.
* * * * * * * * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. All the parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction over the parties and this claim, and this claim is subject to the Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff employee at the time of the admitted injury.
3. The defendant is insured by Constitution State Service Company.
4. The employee's average weekly wage was $300.78 at the time of the admitted injury, which yields a compensation rate of $200.53 per week.
5. The plaintiff was employed as a package inspector at the time of her injury.
6. Plaintiff sustained a compensable injury to her low back on February 16, 1993, when she strained her back lifting a tub of hose.
7. The plaintiff remained out of work from February 17, 1993 through the date of the hearing before the Deputy Commissioner with the exception of the short period of time when she attempted to return to work in February, 1994. When plaintiff did attempt to return to work, she was unable to continue to work due to pain that was caused by the work that she was assigned.
8. Defendants paid plaintiff temporary total disability benefits under the Workers' Compensation Act from February 17, 1993 through May 12, 1993.
9. Defendants stopped the payment of benefits pursuant to a Form 24 that was approved by the Industrial Commission on June 22, 1993.
10. The said Form 24 was approved because it was found that plaintiff had not complied with the treating doctor's direction that she obtain a functional capacity evaluation. Although the plaintiff did obtain the functional capacity evaluation, her benefits were not again started as they should have been.
11. At the time of hearing before the Deputy Commissioner, plaintiff was forty-nine years old. Plaintiff is married and has one minor child at home.
12. Plaintiff first started working for defendant on August 17, 1992.
13. Plaintiff had not had any problems with her back prior to the February 16, 1993 injury.
14. Plaintiff was first seen and treated by Dr. Johnson who referred plaintiff to Dr. William R. Brown, Jr. who first saw plaintiff on or about March 2, 1993, at which time plaintiff's chief complaint was pain in the back and legs with it being sometimes very severe.
15. Dr. Brown originally diagnosed plaintiff's condition as lumbar strain and lumbar spondylosis, with the latter pre-existing the lumbar strain. He also noted that the lumbar spondylosis had not given plaintiff any problems prior to the lumbar strain and that the on-set of pain was due to the lumbar strain.
16. Dr. Brown informed plaintiff that he was going to treat her condition with physical therapy and medication with the intent of returning her to work as soon as possible.
17. Dr. Brown attempted to return plaintiff to work, but the attempt was unsuccessful due to the pain that plaintiff continued to experience.
18. While Dr. Brown saw plaintiff on a regular basis, he found that her condition was not improving. Therefore, she was not released for work during the treatment. With regard to the issue of plaintiff's magnification of her symptoms, Dr. Brown indicated that although there may have been some magnification by plaintiff, he thought that her pain for the most part was real although he was unable to control the pain.
19. Dr. Brown found that plaintiff had a fairly severe degenerative disc disease which after the accident was contributing to plaintiff's pain.
20. Dr. Brown also felt that there was some psychological overlay with plaintiff's problems.
21. Dr. Brown requested that a functional capacity evaluation be performed on plaintiff. Plaintiff did not complete the evaluation due to the pain that she was experiencing when she attempted to perform the different requirements. Therefore, her failure to complete the evaluation was reasonable.
22. Dr. Brown felt that it was reasonable for plaintiff to attempt to return to work under restrictions in July 1993. The restrictions were contained in the functional capacity assessment. It is to be noted that Dr. Brown was not provided with a job description so that he could review it to determine whether it fell within plaintiff's limitations.
23. Dr. Brown gave plaintiff a 5% permanent partial disability rating to her lower back.
24. Plaintiff stopped seeing Dr. Brown prior to his release of her. Instead she then went to see Dr. Arthur F. Becan, a physician of her own choosing, whose findings were basically the same as Dr. Brown's.
25. Dr. Becan felt that plaintiff was unable to perform the functional capacity evaluation due to the pain that she was experiencing and that plaintiff would never be able to perform the job that she performed at the time of her injury.
26. Dr. Becan released plaintiff to return to light duty in October 1993. He took plaintiff out of work again on February 23, 1994, because he found that plaintiff had re-injured her back at work on February 22, 1994, when she had been twisting or bending at work, which caused plaintiff to experience recurrent severe back pain. Dr. Becan placed plaintiff on bed rest and medication.
27. Dr. Becan noted that plaintiff was upset about being in pain constantly and it was not unusual for a chronic pain patient to eventually develop depression. He treated plaintiff's condition with a combination of medication, rest and therapy.
28. Plaintiff was next seen and treated by Dr. Harlan B. Daubert. Dr. Daubert rendered the same diagnosis and his method of treatment was also consistent with Drs. Brown and Becan. Dr. Daubert took over plaintiff's treatment because Dr. Becan moved from North Carolina. Dr. Daubert felt that plaintiff would continue to experience the pain she has been experiencing for the rest of her life. He felt that she is able to work within certain restrictions, some of which are being able to alternate between sitting and standing every 20 to 30 minutes and to walk around between the change of positions, and to move around freely, and weight restriction.
29. Since Dr. Daubert also found that plaintiff had some overlying psychological problems, he referred her to Dr. Kevin E. Wilson, a clinical psychologist.
30. Dr. Wilson found that plaintiff was depressed and that her primary stressor was her continued back pain. Dr. Wilson's treatment of plaintiff was intended to help plaintiff with the conditions she was suffering.
31. Plaintiff has benefited from the treatments that she has received from Drs. Brown, Becan, Daubert and Wilson. Plaintiff is in need of continued treatment for her back pain as well as her psychological problems.
32. Plaintiff's benefits under the Workers' Compensation Act should not have been stopped pursuant to the Form 24 filed by the defendant and approved by the Industrial Commission.
33. Defendant offered to settle this matter on the morning of June 19, 1995 before the start of the second day of hearings in this matter. However, plaintiff's counsel demanded that the hearing continue although defendant was offering to pay everything that plaintiff had requested. Thus the hearing continued for an additional nine hours without any new evidence being offered by plaintiff to cause any additional benefits to be awarded to plaintiff, or without plaintiff requesting that any new matter be considered during the hearing. This unreasonable attitude on the part of plaintiff's counsel explains to some extent the presence of the backlog of cases to be tried at the Deputy Commissioner level. With the defendant's agreement to meet all of the plaintiff's demands, there being no further workers' compensation benefits available to plaintiff, plaintiff was unreasonable in requiring further trial time which consumed valuable trial time preventing other cases with justiciable issues from being heard and ruled upon.
34. Defendant has requested an independent evaluation of plaintiff.
* * * * * * * * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of his work with the defendant on February 16, 1993. N.C. Gen. Stat. § 97-2(6).
2. As a direct result of the admitted injury, plaintiff's pre-existing asymptomatic condition of cervical spondylosis was aggravated causing her to suffer continuous pain in her back and legs. Since she has not yet reached the end of her healing period, plaintiff is entitled to receive temporary total disability benefits from defendant for the period from February 17, 1993 and continuing until such time as she is able to return to work in a suitable position, sustains a change of condition, or further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the admittedly compensable injury she sustained, this includes the payment of the medical bills previously incurred of Drs. Brown, Becan, Daubert and Wilson. Since defendant is entitled to an independent medical examination rendered by a physician of defendant's choosing, plaintiff is obligated to cooperate. N.C. Gen. Stat. § 97-25.
4. Due to plaintiff's insistence that the hearing on June 19, 1995 be conducted in spite of the fact that defendant was offering to pay everything to which plaintiff was claiming entitlement and the fact that during nine hours of testimony no evidence was offered or claimed by plaintiff which would entitle plaintiff to any additional benefits, both the Commission's time and that of the defendant's attorney was unnecessarily consumed. Thus defendant is entitled to recover from plaintiff the additional attorney's fees incurred by defendant in participating in the nine hour hearing after the offer was made by defendant. N.C. Gen. Stat. § 97-88.1.
* * * * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Subject to counsel fees hereinafter approved, defendant shall pay to plaintiff temporary total disability compensation benefits at the rate of $200.53 per week from February 17, 1993 forward until such time as plaintiff has returned to work in a suitable position, sustains a change of condition, or until further order of the Commission. Payment of the accrued amount shall be made in a lump sum subject to an attorney's fee hereinafter approved. Defendant is entitled to a credit for the workers' compensation benefits previously paid to plaintiff.
2. A reasonable attorney fee in the amount of 25 percent of the compensation due plaintiff is approved for plaintiff's counsel. Twenty-five percent of the accrued amount shall be deducted and paid directly to plaintiff's counsel. Thereafter, payment shall be made directly to plaintiff's attorney by way of every fourth check.
3. Defendant shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of the injury she sustained. Payment shall be made after the bills for medical services have been submitted pursuant to the approved Industrial Commission procedure, including the payment of Drs. Brown, Becan, Daubert and Wilson's bills for services previously rendered.
4. Defendant shall pay the costs of this action, including expert witness fees in the amount of $600.00 to Dr. Brown, $400.00 to Dr. Becan which was prepaid by plaintiff's attorney, $300.00 to Daubert and $375.00 to Wilson.
5. Plaintiff shall pay defendant $200.00 in attorney's fees for the unnecessary June 19, 1995 hearing. Even though this amount may appear insignificant, it is the action of assessing the attorney fee for unreasonable conduct which is significant. This panel of the Full Commission in no way wishes to particularly harm this claimant, yet we feel we must protect other claimant's interests as well.
6. Should defendant desire an independent evaluation of plaintiff performed, it shall be performed by a physician of defendant's choosing.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER